**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Chapter 7 Trustee*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY,<br><br>     Debtor. | Chapter 7<br><br>Case No. 16–11345 (RG) |
| RONALD L. COHEN, ESQ., Chapter 7 Trustee of the estate of FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY,<br><br>     Plaintiff,<br>v.<br><br>NASSAR HASSAN,<br><br>     Defendant. | Adv. Proc. No. 18–01644 (RG) |

**NOTICE OF TRUSTEE'S MOTION PURSUANT TO FED. R.**
**BANKR. P. 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT**

    **PLEASE TAKE NOTICE** that upon the annexed motion dated March 3, 2020 (the "**Motion**") of Ronald L. Cohen, Esq., the Chapter 7 Trustee (the "**Trustee**") of the estate of First Wives Entertainment Limited Liability Company (the "**Debtor**"), the undersigned will move at a hearing before the Honorable Robert E. Grossman, United States Bankruptcy Judge, in Courtroom 501 of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York NY 10004, on **March 31, 2020 at 10:00**

**a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel can be heard (the "**Hearing Date**"), for the entry of an order approving the settlement agreement by and between the Trustee and Defendant Nassar Hassan as set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion, if any, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the grounds for such response or objection with specificity, and shall be filed with this Court electronically in accordance with General Order M-399 (General Order M-399 and the Procedures for Filing, Signing and Verification of Documents by Electronic Means can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of this Court's filing system, and by all other parties in interest on a CD-ROM or other electronic media, preferably in PDF or any Windows-based word processing format, with a hard copy delivered directly to Judge Grossman's chambers, and served in accordance with General Order M-399 upon: (i) Rosen & Associates, P.C., counsel to the Trustee, 747 Third Avenue, New York, NY 10017, Attn: Sanford P. Rosen, Esq.; (ii) Stevens & Lee, P.C., counsel to Nassar Hassan, 485 Madison Avenue, 20th Floor, New York, NY 10022, Attn: Constantine D. Pourakis, Esq.; (iii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, NY 10014; and (iv) all parties that have requested notice pursuant to Bankruptcy Rule 2002, **so as to be received no later than March 24, 2020 at 5:00 p.m. (prevailing Eastern Time)**.

[*signature page follows*]

Dated: New York, New York
      March 3, 2020

                              **ROSEN & ASSOCIATES, P.C.**
                              *Counsel to the Chapter 7 Trustee*

                              By:  /s/  *Sanford P. Rosen*
                                        Sanford P. Rosen

                              747 Third Avenue
                              New York, NY 10017-2803
                              (212) 223-1100

*Hearing Date: March 31, 2020*
*Time: 10:00 a.m.*

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Chapter 7 Trustee*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY,<br><br>                        Debtor. | Chapter 7<br><br>Case No. 16–11345 (RG) |
| RONALD L. COHEN, ESQ., Chapter 7 Trustee of the estate of FIRST WIVES ENTERTAINMENT LIMITED LIABILITY COMPANY,<br><br>                        Plaintiff,<br>v.<br><br>NASSAR HASSAN,<br><br>                        Defendant. | Adv. Proc. No. 18–01644 (RG) |

**TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019**
**FOR APPROVAL OF SETTLEMENT AGREEMENT**

TO THE HONORABLE ROBERT E. GROSSMAN,
UNITED STATES BANKRUPTCY JUDGE:

        Ronald L. Cohen, Esq., the Chapter 7 Trustee (the "**Trustee**") of the estate of First Wives Entertainment Limited Liability Company (the "**Debtor**"), through counsel, Rosen & Associates, P.C., submits this motion (the "**Motion**") for the entry of an order, pursuant to 11 U.S.C. § 105(a) and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving the Settlement Agreement (defined below) by and between the Trustee as

plaintiff, and Nassar Hassan, as defendant (the "**Defendant**" and together with the Trustee, the "**Parties**") in the above-referenced adversary proceeding, and respectfully represents as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. This Court has jurisdiction to consider this Motion as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a), as supplemented by Rule 9019 of the Bankruptcy Rules.

## PROCEDURAL BACKGROUND

2. On May 11, 2016 (the "**Filing Date**"), Aruba Productions, LLC, Arnold Venture Fund, LP and Edward H. Arnold (collectively, the "**Petitioning Creditors**") filed an involuntary petition for relief against the Debtor under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

3. On June 27, 2016, the Debtor filed a motion to convert the involuntary chapter 7 case to a case under chapter 11 of the Bankruptcy Code [Doc. No. 5], and the Court granted the motion by order dated August 23, 2016 [Doc. No. 11].

4. On August 8, 2017, the Petitioning Creditors filed a motion to dismiss or convert the Debtor's chapter 11 case pursuant section 1112(b) of the Bankruptcy Code [Doc. No. 105], and the Court granted the motion by order dated September 25, 2017 [Doc. No. 129], converting the case to one under chapter 7 of the Bankruptcy Code.

5. Consequently, the meeting of creditors pursuant to section 341 of the Bankruptcy Code (the "**341 Meeting**") was scheduled by the Clerk on November 8, 2017, and

later adjourned to December 11, 2017 to allow creditors to elect a trustee pursuant to section 702(b) of the Bankruptcy Code.

6. At the adjourned 341 Meeting held on December 11, 2017, Ronald L. Cohen was elected Trustee.

7. On December 26, 2017, the Office of the United States Trustee filed the *Report of Undisputed Election of Chapter 7 Trustee* [Doc. No. 151] with respect to Mr. Cohen's election, and Mr. Cohen has since duly qualified, and is now serving in such capacity.

## FACTUAL BACKGROUND

### A. The Transfer

8. Prior to the Petition Date, the Debtor entered into an agreement (the "**Licensing Agreement**") with Viacom Consumer Products Inc., a subsidiary of Paramount Pictures Corporation, which was the producer and distributor of the theatrical motion picture: *The First Wives' Club*, based on the novel by Olivia Goldsmith.

9. Under the terms of the Licensing Agreement, the Debtor was granted the right to "make, write, and compose one dramatico-musical live stage adaptation" of *The First Wives' Club*.

10. However, the Debtor failed to perform its obligations under the Licensing Agreement and never produced *The First Wives' Club* musical. The Licensing Agreement expired on December 31, 2017, approximately three months after the case was converted to a case under chapter 7 of the Bankruptcy Code.

11. On September 26, 2018, the Trustee filed a complaint (the "**Complaint**") [Adv. Proc. Doc. No. 1] against the Defendant commencing the adversary proceeding in this Court styled, *Cohen v. Hassan* (Adv. Proc. No. 18–01644) (the "**Adversary Proceeding**").

3

12. Through the Complaint, the Trustee sought to avoid and recover a transfer of $500,000 on or about October 22, 2014 (the "**Transfer**") by the Debtor to the Defendant as a fraudulent conveyance under sections 548 and 550 of the Bankruptcy Code and for related relief. *See* COMPL. ¶ 31.

13. On December 28, 2018, the Defendant filed an answer to the Complaint, denying the Trustee's substantive allegations. *See* ANS. [Adv. Proc. Doc. No. 7].

B. **The Settlement Agreement**

14. During the course of discovery, the Parties engaged in lengthy and detailed discussions regarding the facts and law underlying the claims and defenses asserted in the pleadings. Both Parties engaged experts who produced reports relating to the Debtor's solvency at the time the Transfer was made.

15. The Defendant asserted that the Debtor was not insolvent at the time the Transfer mas made, because, *inter alia*, the loan made by Edward H. Arnold (a Petitioning Creditor) of approximately $1.6 million (the "**Arnold Transaction**"), despite having been accounted for as debt, lacks many of the characteristics typical of loan obligations (*i.e.*, a signed instrument, a market rate of interest, a maturity date, a repayment schedule and security or collateral), and thus should be recharacterized as equity.

16. Further, the Defendant argued that, under the "indirect benefit theory," the Debtor received reasonably equivalent value on account of the Transfer because the Debtor had credited the amount of the Transfer to its obligation to a third–party creditor. However, the Trustee has disputed this assertion, and confirmed that the Debtor's books and records do not corroborate this defense.

17. Ultimately, the Parties' discussions evolved into settlement negotiations, which culminated in the execution of the *Settlement Agreement and Release* (the "**Settlement Agreement**") on November 7, 2019. A copy of the Settlement Agreement is annexed hereto as *Exhibit B*.

18. The salient terms[1] of the Settlement Agreement are as follows:

   i. The Defendant shall pay the Trustee, in full and final settlement and release of the claims asserted in the Adversary Proceeding, the sum of $150,000 (the "**Settlement Payment**"), the first $75,000 of which (the "**Initial Payment**") to be paid within two business days of December 31, 2019, and the remaining $75,000 to be paid in twelve equal installments (such monthly payments, the "**Installment Payments**") commencing within two business days of February 1, 2020.[2] *See* Ex. B ¶ 2.

   ii. The Defendant shall deliver to the Trustee an Affidavit of Confession of Judgment in the amount of $500,000 which the Trustee shall maintain in escrow. In the event the Defendant defaults in his obligation to make the Initial Payment or any of the Installment Payments when due, such default, after notice of the default and seven days thereafter to cure same, shall constitute authority for the Trustee to file the Affidavit of Confession of Judgment with the Bankruptcy Court and a judgment shall be entered against the Defendant in the amount of $500,000 less an amount equal to the payments that shall have been made as of the date of such default. *See* Ex. B ¶ 3.

   iii. Upon the Trustee's receipt of the Settlement Payment, the Parties will exchange complete mutual releases. *See* Ex. B ¶¶ 4-5.

   iv. Upon the Trustee's receipt of the Settlement Payment, the Parties will file of a notice of dismissal of the Adversary Proceeding. *See* Ex. B ¶ 6.

---

[1] Specific reference to the Settlement Agreement should be made for the complete terms thereof. If there are any inconsistencies between the terms of the Settlement Agreement and the summary set forth herein, the terms of the Settlement Agreement shall govern.

[2] Notwithstanding the provisions in paragraph ten (10) of the Settlement Agreement, the Parties have agreed in writing to extend the time to effectuate the terms of the Settlement Agreement from December 31, 2019 to April 30, 2020.

**RELIEF REQUESTED**

19. After investigating the Debtor's financial affairs and analyzing the defenses asserted by the Defendant, the Trustee has concluded that the proposed Settlement Agreement represents a sound exercise of his business judgment and is in the best interest of the estate and creditors.

20. By this Motion, the Trustee seeks the entry of an order, substantially in the form annexed hereto as *Exhibit A*, approving the Settlement Agreement pursuant to Bankruptcy Rule 9019(a), and submits that, for the reasons outlined below, the Settlement Agreement should be approved by the Court.

**DISCUSSION**

21. Bankruptcy Rule 9019(a) provides, in relevant part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

22. As a general matter, "settlements and compromises are favored in bankruptcy, as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641–642 (Bankr. S.D.N.Y. 2012); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452, 455 (2d Cir. 2007) (settlements "help clear a path for the efficient administration of the bankrupt estate").

23. "Although courts have discretion to approve settlements, the business judgment of the [trustee] in recommending the settlement should be factored into the court's analysis." *In re MF Global Inc.*, No. 11-2790 MG, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012).

24. In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *See Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968) (hereinafter "TMT Trailer"); *Air Line Pilots Ass'n v. Am. Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). The court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

25. In *In re Iridium Operating LLC*, the Second Circuit Court of Appeals directs courts to consider the following factors (the "***Iriduim* Factors**") in determining whether to approve a settlement:

> (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and delay,' including the difficulty in collecting on the judgment; (iii) 'the paramount interests of the creditors,' including each affected class's relative benefits 'and the degree to which creditors either do not object to or affirmatively support the proposed settlement'; (iv) whether other parties in interest support the settlement; (v) the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge of the bankruptcy court judge' reviewing, the settlement; (vi) 'the nature and breadth of releases to be obtained by officers and directors'; and (vii) 'the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007) (internal citation omitted).

26. While a court must evaluate "all . . . factors relevant to a full and fair assessment of the wisdom of the proposed compromise," (*TMT Trailer*, 390 U.S. at 424) there is no requirement for the court to conduct a "mini-trial" of the claims being settled or a full

7

independent investigation. *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983).

27. Rather, a court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness." *Id.; accord In re Drexel Burnham Lambert Grp., Inc*., 134 B.R. at 505 (Bankr. S.D.N.Y. 1991).

28. Here, a review of the relevant *Iridium* Factors strongly supports approval of the Settlement Agreement.

### *(i) Likelihood of Success on the Merits*

29. The first of the *Iridium* Factors reflects the Supreme Court's view that a court should form an "intelligent and objective opinion" of the probability of success in the underlying litigation. *TMT Trailer,* 390 U.S. at 424.

30. As the court stated in *In re Adelphia*, "[T]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *See In re Adelphia Commc'n Corp.,* 327 B.R. 143, 159 (Bankr. S.D.N.Y 2005) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

31. Here, the Trustee recognizes that the Defendant's expert report supports the contention that under applicable debt recharacterization authority in this circuit, the Arnold Transaction may indeed be determined to be an equity investment, as opposed to debt. Such recharacterization would render the Debtor solvent at the time of the Transfer and defeat the claims asserted by the Trustee in the Complaint. *See In re Best Prods. Co., Inc.,* 168 B.R. 35, 54 (Bankr. S.D.N.Y. 1994) (approving settlement after concluding with respect to solvency "that there would

be potentially credible evidence on both sides of the issue of solvency with the result that 'this would be a very, very hard case to predict'").

32. The Trustee submits that this first *Iridium* Factor clearly weighs in favor of approving the Settlement Agreement. *See In re Adelphia,* 368 B.R. at 226 ("'In administering [liquidation] proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'") (quoting *TMT Trailer,* 390 U.S. at 424).

### *(ii) Likelihood of Complex, Costly and Protracted Litigation*

33. In evaluating the reasonableness of a settlement, a court should "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer,* 390 U.S. at 424.

34. As noted above, the Trustee acknowledges that the Arnold Transaction indeed lacks certain of the characteristics typical of a loan obligation and could be recharacterized as equity, which would render the Debtor solvent at the time of the Transfer.

35. Consequently, the Trustee submits that approval of the Settlement Agreement is clearly supported by the first and second *Iridium* Factors.

### *(iii) The Paramount Interest of Creditors*

36. The "paramount interest of creditors" generally reflects not only the desire to recover the greatest amount upon the creditors' allowed claims, but also their competing desire that recovery should occur in the least amount of time possible. *See In re Marples*, 266 B.R. 202 (Bankr. D. Idaho 2001).

9

37. The Trustee submits that, in light of the facts obtained during discovery, the proposed Settlement Agreement furthers the interests of all creditors and parties-in-interest to the estate by preventing any diminution in amounts available for distribution that would occur by the expenditure of additional estate resources that cannot be justified on a cost-benefit analysis.

*(iv) Competency of Counsel*

38. The Trustee submits that throughout this case, both Parties have been represented by skilled and experienced bankruptcy counsel, knowledgeable about the types of issues that would arise in any litigation of claims of this nature. Courts have given this factor considerable weight. *See In re Chemtura Corp.,* 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (holding that settlement easily satisfied the Iridium requirements, in part because "[n]o argument has been made, nor could any argument be made, that counsel who put the Settlement together were anything less than highly skilled in their craft, and knowledgeable in the considerations underlying a settlement of this character").

*(v) Nature and Breadth of Releases to be Obtained*

39. The Parties have agreed, as part of the Settlement Agreement, to provide consensual releases resolving all of the underlying disputes with finality, thereby preventing potential collateral litigation in the future that would upset the core terms of the Settlement Agreement. *See* Ex. B ¶¶ 3-4. These releases are an integral part of the Settlement Agreement and indeed, customary in any settlement. *See, e.g., In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 142 (2d Cir. 2005) ("Nondebtor releases may also be tolerated if the affected creditors consent"); *Kenton County Bondholders Comm. v. Delta Air Lines, Inc.,* 374 B.R. 516, 526 (S.D.N.Y. 2007) (finding bankruptcy court's approval of third party releases in settlement agreement was appropriate where such releases were "narrowly drawn and [were] necessary to

prevent relitigation of precisely the claims that were negotiated and resolved by the Settlement Agreement" and "comprised valuable consideration for [the creditors] in return for their agreement to give up" claims against the debtor); *In re MSR Resort Golf Course LLC,* Case No. 11-10372 (Bankr. S.D.N.Y. July 17, 2011) (order approving settlement providing for mutual releases between debtors and non-debtor third parties); *In re Lehman Bros. Holdings Inc.,* Case No. 08-13555 (Bankr. S.D.N.Y. Dec. 16, 2010) (same). Moreover, the Trustee believes that without the consensual releases, the Defendant would not have agreed to the terms of the Settlement Agreement.

### *(vi) Extent to Which the Proposed Settlement is the Product of Arm's-Length Negotiations*

40. Finally, the terms and conditions of the Settlement Agreement are the product of arms-length negotiations, proposed and entered in the utmost good faith. *See In re Charter Communc'ns,* 419 B.R. at 257 ("The Court is satisfied that the [settlement] represents the considered judgment of economically motivated parties who were negotiating at arm's-length to reach the best settlement that could be achieved under the circumstances.")

41. Accordingly, the Trustee submits that the proposed settlement amply satisfies this final *Iridium* Factor as well.

## CONCLUSION

42. In light of the foregoing, the Trustee submits that the Settlement Agreement is fair, equitable and in the best interests of the estate and should be approved.

## NOTICE

43. The Trustee will give notice of this Motion and the prefixed *Notice of Motion* by causing a copy to be served via first-class mail upon: (i) the Office of the United States

Trustee, 201 Varick Street, Suite 1006, New York, NY 10014; (ii) all creditors of the Debtor; and (iii) all entities that have requested notice and service of papers pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, the Trustee respectfully requests the entry of an order, substantially in the form annexed hereto as *Exhibit A,* granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 3, 2020

                                       **ROSEN & ASSOCIATES, P.C.**
                                       *Counsel to the Chapter 7 Trustee*

                                       By:  */s/ Sanford P. Rosen*
                                                       Sanford P. Rosen
                                                        Paris Gyparakis

                                       747 Third Avenue
                                       New York, NY 10017-2803
                                       (212) 223-1100